1

2   **E-Filed 1/31/06**

3

4

5

6

7   NOT FOR CITATION

8   **IN THE UNITED STATES DISTRICT COURT**

9   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10   **SAN JOSE DIVISION**

11

12   In re:                                     Case No. C 05-4471 JF
     BRIDGESPAN CORPORATION,
13                                              ORDER[1] GRANTING MOTION FOR
     Debtor.                                    WITHDRAWAL OF REFERENCE
14
     MOHAMED POONJA, Chapter 7 Trustee,
15
                           Plaintiff,
16
     v.
17
     BRIDGESPAN TITLE COMPANY, a California
18   corporation, et al.,
19                         Defendants.
20

21                          **I. BACKGROUND**

22       On January 12, 2005, Plaintiff Mohamed Poonja, Chapter 7 Trustee of BridgeSpan

23   Corporation ("BSC"), filed a complaint against BSC's parent corporation, BridgeSpan Inc.

24   ("BSI"); BSC's sister corporation, BridgeSpan Title Company ("BST"); National Union Fire

25   Insurance Company of Pittsburgh, PA ("National Union"); and twenty-six officers and directors

26   ("Individual Defendants") of BSI, BST, and BSC.  Plaintiff alleges eight claims for relief: (1)

27

28       [1]       This disposition is not designated for publication and may not be cited.

1  Breach of Fiduciary Duty; (2) Negligent Misrepresentation; (3) Breach of Contract; (4)

2  Negligence; (5) Claim on Financial Institution Bond; (6) Declaratory Relief; (7) Deepening

3  Insolvency; and (8) Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

4  § 1961, *et seq.* ("RICO").  Plaintiff requests compensatory and exemplary damages, including

5  treble damages pursuant to 18 U.S.C. § 1964(c), declaratory relief, and reasonable attorneys fees.

6       Plaintiff alleges the following facts:  Defendant BSI developed and marketed a web-based

7  software platform, eMortageAxis ("eMA"), to provide an automated system for lenders, title

8  companies, and real estate professionals to manage the processing of real estate purchases and

9  loan closings.  (First Amended Complaint ("FAC") ¶ 4, 7, 35).  BSC and BST are title insurance

10 agents who used eMA to perform title, escrow, and settlement services.  (FAC ¶ 35).  As

11 independent title agencies, the duties of BSC and BST include (1) researching title for

12 underwriters to determine the condition for issuance of title insurance; and (2) perfecting

13 interests in title to real property by recording mortgages, property deeds, deeds of trust, and

14 releases of liens and judgments in the county property records.  (FAC ¶ 44).

15      Before BSC commenced its bankruptcy case, a number of title companies learned that

16 BSC failed to record a large number of mortgages for a significant lender.  BSC and its officers

17 and directors assured the title companies that BSC would solve this problem promptly.  (FAC ¶

18 46).  However, by early January 2004, one of the title companies discovered that hundreds of

19 mortgages were still unrecorded and that BSC's files and records were extremely disorganized.

20 (FAC ¶ 48).  On or about January 9, 2004, BSC declared itself operationally insolvent.  (FAC ¶

21 49).  Plaintiff Trustee was appointed and, after conducting an investigation of Defendants,

22 allegedly discovered the following: (1) Defendants' failure to record mortgages, deeds of trust,

23 and releases of liens in conformance with industry standards and/or the title companies' policies

24 and procedures; (2) failure to properly issue title insurance in conformance with industry

25 standards and the title companies' policies; (3) failure to adequately perform property title

26 searches; (4) failure to comply with all statutes and governmental rules; (5) failure to maintain

27 adequate records regarding escrow and closing funds; (6) improperly retained and failure to

28 disburse millions of dollars in escrowed funds to the appropriate lenders and property sellers; and

2

1  (7) improperly transferred millions of dollars to BSI and BST by BSC.  (FAC ¶ 51).

2      After Plaintiff filed his original adversary complaint in the Bankruptcy Court on January

3  12, 2005, nineteen of the Individual Defendants filed a joint motion for a determination of the

4  parties' right to a jury trial (the "Jury Trial Motion") in the Bankruptcy Court on April 5, 2005.

5  That motion sought to determine whether (1) a jury trial timely was demanded; (2) the parties are

6  entitled to a jury trial; and (3) the parties would consent to a jury trial before the Bankruptcy

7  Court.  (Defendants' Motion, at 2).  The Bankruptcy Court held several hearings on the Jury Trial

8  Motion, which remains pending.  Defendants filed several requests to expedite hearing on April,

9  5, 2005, June 7, 2005, and September 30, 2005.  Plaintiff filed a First Amended Complaint on

10  August 5, 2005, which included a demand for a jury trial.  Various defendants moved to dismiss

11  the First Amended Complaint, and several defendants declined to consent to the entry of any

12  final order or judgment by the Bankruptcy Court.  (Seifert Decl. ¶2).  On October 24, 2005,

13  Defendants Bruce Dunlevie, Nanda Kishore, Mark Stevens, Mark Evans, and Siva Kumar filed

14  the instant motion seeking withdrawal of the reference of the adversary proceeding to the

15  Bankruptcy Court.  The motion was joined by BSI and BST on January 18, 2006.  Plaintiff

16  Trustee opposes the motion.

18  **II.  LEGAL STANDARD**

19      The District Court's authority for withdrawal of reference is governed by section (d) of 28

20  U.S.C. § 157:

> The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for *cause shown*.  The district court shall, on *timely motion* of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of *both* title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

25      This provision mandates withdrawal of reference from the Bankruptcy Court where

26  resolution of adversary proceeding involves "substantial and material consideration of non-

27  bankruptcy federal statutes." *Burger King Corp. v. B-K of Kansas, Inc.*, 64 B.R. 728, 731 (D.

3

Kan. 1986) (interpreting 28 U.S.C. § 157(d)). The provision also provides for permissive

withdrawal if a good cause is shown. Determination of good cause for permissive withdrawal

depends on several factors: (1) whether the claim or proceeding is core or non-core; (2) whether

it is legal or equitable; (3) considerations of efficiency; (4) prevention of forum shopping; (5)

uniformity of bankruptcy administration; and (6) the presence of a jury demand. *See Security

Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th

Cir. 1997); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

### III. Discussion

The Moving Defendants move to withdraw the adversary proceeding on three grounds.

First, they assert that this motion is timely under 28 U.S.C. § 157(d), because it was made at the

"first reasonable opportunity." Second, they suggest that ample cause exists for permissive

withdrawal, because none of the claims asserted in the adversary complaint are core to the

bankruptcy proceeding and the Moving Defendants do not consent to a jury trial or entry of final

judgments by the Bankruptcy Court. Third, the Moving Defendants assert that Plaintiff's RICO

claim requires mandatory withdrawal. Plaintiff opposes the motion to withdraw, asserting that

the District Court should permit the Bankruptcy Court to manage the case until trial or the case is

resolved. Second, Plaintiff asserts that he has alleged a core claim, and that the Bankruptcy

Court could act as an adjunct to the District Court if an issue is non-core. Finally, Plaintiff

asserts that it has not been determined whether the RICO claim should be dismissed.

**A. Timeliness**

"There is no specific time limit for applications under 28 U.S.C. § 157 to withdraw a

reference to the bankruptcy court." However, "delay for tactical reasons, prejudicial to the

adversary or to the administration of justice, can be grounds for denying such an application." *In

re New York Trap Rock Corp.*, 158 B.R. 574 (S.D.N.Y. 1993). Here, Plaintiff filed his original

adversary complaint on January 12, 2005. Defendants filed their Jury Trial Motion on April 5,

2005. The Bankruptcy Court denied defense's motion to expedite hearings on their Jury Trial

1  Motion, and has continued that motion as well as motions to dismiss the adversary proceeding

2  until February 21, 2006.  Under these circumstances, the Court concludes that the Moving

3  Defendants did not delay unduly in bringing the instant motion and that Plaintiff would not be

4  prejudiced.

5

6  **B. Permissive Withdrawal of the Reference**

7        Assuming *arguendo* that mandatory withdrawal is not required, good cause supports

8  permissive withdrawal of the reference.  A district court's determination whether to withdraw the

9  reference turns on whether the claim is core or non-core.  *In re Orion Pictures Corp.*, 4 F.3d at

10  1101.  A bankruptcy judge may issue final judgments with respect to those proceedings which

11  are "core" to the bankruptcy case under 28 U.S.C. § 157(b)(2).  In addition, the bankruptcy judge

12  may hear proceedings which are not "core" but are  "otherwise related to a case under title 11."

13  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities,

14  options, or freedom of action and which in any way impacts upon the handling and

15  administration of the bankrupt estate.  *Fietz v. Great Western Savings,* 852 F.2d 455, 457 (9th

16  Cir. 1988).  The bankruptcy judge may issue final orders in such matters with the consent of the

17  parties.  If the parties do not consent, the bankruptcy judge may submit proposed findings to the

18  district court for *de novo* review; the district court must issue the final order and judgment.  28

19  U.S.C. § 157(c)(1).

20        The Court concludes that the adversary proceeding is a non-core related proceeding.

21  Plaintiff's state law claims, including breach of fiduciary duty, negligent misrepresentation,

22  breach of contract, negligence, claim on financial bond, declaratory relief, and deepening

23  insolvency, did not "arise under or in a case under title 11."  These claims do not fall within one

24  of the enumerated core proceedings in 28 U.S.C. § 157(b)(2)(B)-(N).  Plaintiff Trustee asserts

25  that "Defendants' failure to discharge their obligations and perform the most elemental duties"

26  are matters concerning the "administration of the estate." (Plaintiff Opp., at 9).  This arguably

27  falls under the "catch-all" provision in § 157(b)(2)(A).  However, state law claims that arguably

28  fit within the literal wording of the catch-all provision have been held to be non-core related

5

proceedings. *In re Castlerock Properties*; 781 F.2d 159, 162 (9th Cir. 1986).

The Moving Defendants explicitly declined to consent to the Bankruptcy Court's entry of final judgment in a declaration filed on October 24, 2005. Plaintiff argues that the Bankruptcy Court could act as an adjunct to the District Court. Because Bankruptcy Court's determinations in non-core proceedings are subject to *de novo* review, *In re Daniels-Head & Associates*, 819 F.2d 914, 918 (9th Cir. 1987) ("The district court ... [reviews] the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo"), a single proceeding in the District Court would promote efficiency and judicial economy.

Similarly, the Moving Defendants explicitly declined to consent to a jury trial before the Bankruptcy Court. "The bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court." 28 U.S.C. § 157(e); *In re Dyer*, 322 F.3d 1178, 1194 (9th Cir. 2003). Accordingly, if a jury trial is required, it must be conducted in the District Court absent the Moving Defendants' consent. Under these circumstances, permissive withdrawal of the reference appears to be warranted.

**C. Mandatory Withdrawal of the Reference**

Mandatory withdrawal is warranted if the resolution of the adversary proceeding involves "substantial and material consideration" of both title 11 and other non-bankruptcy federal laws. 28 U.S.C.A. § 157(d). Here, Plaintiff has alleged a RICO claim, and explicitly claimed in his First Amended Claim that "Defendants are (or were) employed by an enterprise engaged in, or the activities of which affect, '*interstate or foreign commerce*'" under 18 U.S.C. § 1962(a), (b), or (c). (FAC ¶ 96). Accordingly, mandatory withdrawal appears to be required.

Case No. C 05-4471 JF
ORDER GRANTING MOTION FOR WITHDRAWAL OF REFERENCE
(JFEX2)

## IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the motion for withdrawal of reference to the Bankruptcy Court is GRANTED.


IT IS SO ORDERED.


DATED:  1/31/06

_____
JEREMY FOGEL
United States District Judge

7

1  Copies of Order mailed on _____ to:

2

3  Christopher H. Doyle     chd@msandr.com, lak@msandr.com

4  Patrick Edward Gibbs       patrick.gibbs@lw.com, zoila.aurora@lw.com

5  Amy Matthew     AM@MSANDR.COM, KLW@MSANDR.COM

6  Mark Jeremy Seifert     mark.seifert@lw.com,

7  Stephen Chew Seto    scs@msandr.com,

8  Michael Lloyd Smith    mls@mmker.com

9  James A. Tiemstra     jat@msandr.com,

10  Kirk Wagner    kwagner@nheh.com,

11  USBC Manager-San Jose
US Bankruptcy Court
12  280 South First Street
Room 3035
13  San Jose, CA 95113

14  Lisa Omori
Noland Hamerly Etienne and Hoss
15  333 Salinas Street
Salinas, CA 93901

16  Phillip K. Wang
Law Offices of Gordon and Rees
17  275 Battery Street #2000
San Francisco, CA 94111

18
19
20
21
22
23
24
25
26
27
28

8

Case No. C 05-4471 JF
ORDER GRANTING MOTION FOR WITHDRAWAL OF REFERENCE
(JFEX2)