**E-Filed 4/4/06**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: BRIDGESPAN CORP.,<br><br>                Debtor.<br>_____<br><br>MOHAMED POONJA,<br><br>                Plaintiff,<br><br>      v.<br><br>BRIDGESPAN TITLE COMPANY, et al.,<br><br>                Defendants. | Case Number C 05-4471 JF<br><br>ORDER[1] GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART<br><br>[Re: Docket Nos. 17, 19, 21, 26, 28] |

## I. BACKGROUND

BridgeSpan, Inc. ("BSI") is the parent corporation of BridgeSpan Corp. ("BSC"), a Texas-based corporation, and BridgeSpan Title Co. ("BST"), a California-based corporation, two wholly owned subsidiaries. BSI was founded to develop and market an online software program ("eMA System") designed to provide an automated system for title agents, such as BSC and BST, to process real estate purchases and loan closings. Beginning in 2002, BSC and BST used

---

[1] This disposition is not designated for publication and may not be cited.

the eMA System and paid fees to BSI for use and BSI's technical support.

BSC was a title agent and recorded mortgages, property deeds, deeds of trust, and performed title, escrow, and settlement services using the eMA System. BSC also researched title to determine the conditions under which an underwriter would issue title insurance, and the title insurance policies subsequently would be issued pursuant to these conditions. BSC entered into agreements with underwriters such as Old Republic National Title Insurance Co., Lawyers Title Insurance Corp., and Stewart Title Co. ("Title Companies").

In January, 2004, one of the Title Companies inspected BSC's office after it learned that BSC had not recorded certain mortgages. On inspection, the Title Company found that BSC's office contained hundreds of improperly filed and unrecorded mortgages dating back to April, 2003. On January 27, 2004, BSC filed for corporate bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* ("Chapter 7").[2] The Title Companies have asserted claims against BSC resulting from BSC's breach of its obligations to the Title Companies.

On January 12, 2005, Plaintiff Mohamed Poonja ("Poonja"), the Chapter 7 bankruptcy trustee for BSC, filed a complaint alleging that BSC breached contractual and other duties to the Title Companies, causing BSC to incur liability. The Title Companies now are creditors in BSC's Chapter 7 proceeding. Poonja seeks to hold BSI, BST,[3] National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and twenty-six individual officers and directors of BSI, BST, and BSC (collectively, "individual defendants") responsible for BSC's debts and liabilities. Poonja claims that BSI, BST, and the individual defendants failed to: (1) record instruments to title; (2) properly issue title insurance in conformity with standard industry practices; (3) adequately research title; (4) maintain files; (5) reconcile accounts and remit premiums owed to title companies; (6) comply with statutes applicable to title agents; (7) provide

---

[2] Case No. 04-50500.

[3] On January 26, 2004, both BSI and BST filed for voluntary bankruptcy under Chapter 11 of Title 11 of the United States Code, pending in the Northern District of California, Case Nos. 04-50492 JRG and 04-50491 JRG.

2

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART
(JFEX1)

sufficient advance notice of BSI's and BST's insolvency; (8) provide sufficient reports to title companies regarding business transacted on their behalf; (9) issue the correct type of title insurance; (10) maintain adequate records; and (11) properly disburse escrow funds.

On August 5, 2005, Poonja filed a first amended complaint ("FAC") asserts eight claims for relief: (1) breach of fiduciary duty against the individual defendants; (2) negligent misrepresentation against the individual defendants; (3) breach of contract against BSI and BST; (4) negligence against BSI and BST; (5) claim on a fidelity bond against National Union; (6) declaratory relief against National Union; (7) deepening insolvency against all Defendants except National Union; and (8) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, against all Defendants except National Union.

Defendants have filed five separate motions to dismiss.[4]  Defendants seek dismissal of claims for: breach of fiduciary duty, negligent misrepresentation, claim on a fidelity bond, declaratory relief, deepening insolvency, and the RICO violation.  Defendants did not challenge the breach of contract or the negligence causes of action.  Poonja opposes.

Having considered the briefs, the relevant evidence, and the oral arguments at the hearing on March 31, 2006, the Court will grant the motions to dismiss with leave to amend in part and without leave to amend in part.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 9(b) requires that the "circumstances constituting fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b).  Statements of the "time, place, and nature of the alleged fraudulent activities are sufficient," while "mere conclusory allegations of fraud" are not.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)

---

[4]  The five separate motions to dismiss were filed by Defendants: (1) Bruce Dunlevie, Nanda Kishore, Mark Stevens, Mark Evans, and Siva Kumar (collectively, "BSI directors"); (2) BSI and BST; (3) Mindy Benjamin, James Buchanan, Desmond Cahill, Dan Courtney, Michael Coyne, Lynelle Dahn, Harley Davis, Joseph Donato, Joseph J. Evans, Mark Feld, Wesley Krantz, Michael Mills, John Roberts, Robert G. Rockwell, Daryl Shoptaugh, Larry Walker, and Phillip Weaver (collectively, "Benjamin defendants"); (4) William Moody, Daniel Gaudreau, and Trevor Stoffer (collectively, "Moody defendants"); and (5) National Union.

3

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART
(JFEX1)

1  (stating that a pleading is sufficient under Rule 9(b) "if it identifies the circumstances
2  constituting fraud so that a defendant can prepare an adequate answer from the allegations").

3       A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two
4  reasons: (1) Lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal
5  theory. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds,*
6  *Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of a motion to dismiss, all allegations
7  of material fact in the complaint are taken as true and construed in the light most favorable to the
8  non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995);
9  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

10       "A complaint should not be dismissed unless it appears beyond doubt the plaintiff can
11  prove no set of facts in support of his claim that would entitle him to relief." *Clegg*, 18 F.3d at
12  754. The court, however, "is not required to accept legal conclusions cast in the form of factual
13  allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id.* at
14  754-55. A court's review is limited to the face of the complaint, documents the complaint
15  referenced, and matters of which the court may take judicial notice. *Anderson v. Clow (In re Stac*
16  *Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *Levine v. Diamanthuset, Inc.*, 950
17  F.2d 1478, 1483 (9th Cir. 1991).

18       Motions to dismiss generally are viewed with disfavor under this liberal standard and are
19  granted rarely. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Leave to
20  amend must be granted unless it is clear that amendments cannot cure the complaint's
21  deficiencies. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Nevertheless, when
22  amendment would be futile dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d
23  386, 393 (9th Cir. 1996); *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988); *Beezley v.*
24  *Fremont Indem. Co.*, 804 F.2d 530, 531 (9th Cir. 1986) (*per curiam*).

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND
WITHOUT LEAVE TO AMEND IN PART
(JFEX1)

## III. DISCUSSION

A.   Standing

The individual defendants, BSI, and BST, citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972) and *Williams v. Cal. 1st Bank*, 859 F.2d 664 (9th Cir.1988), argue that Poonja lacks standing to sue because a bankruptcy trustee does not have standing to pursue claims on behalf of a debtor when creditors are the real parties in interest. In *Caplin*, the Supreme Court held that the trustee lacked standing to pursue third party claims because the debenture holders did not assign their claims to the trustee. *Caplin*, 406 U.S. at 428-34. Following *Caplin*, the Ninth Circuit addressed the question of whether a bankruptcy trustee could pursue claims on behalf of third party creditors who assigned claims to the trustee. *See Williams*, 859 F.2d at 666-67. In *Williams*, the trustee accepted assignments of the investors' claims. *Id.* at 665. A motion to dismiss was filed arguing that the trustee lacked standing to bring the investors' claims. *Id.* In denying the motion, the district court concluded that a trustee may bring claims of third party creditors where there was an assignment approved by the bankruptcy court. *Id.* The Ninth Circuit, relying on *Caplin*, held that the trustee lacked standing to assert these third party creditor claims despite assignment. *Id.* at 667. The court reasoned that despite assignment, the investors remained the real parties in interest because the assigning investors would receive most of the recovery while the trustee and the estate would recover only administrative costs. *Id.* at 666. As the court observed, "[i]n reality, then, the creditors [ ] assigned their claims only for purposes of bringing suit. As a result, the Trustee, as in *Caplin*, [was] attempting to 'collect money not owed to the estate.'" *Id.* at 666-67.

*Williams* and *Caplin* are inapplicable here. Poonja is attempting to recover funds owed to BSC's bankruptcy estate, not money owed to one of the creditor Title Companies. Neither the Title Companies nor any other creditors or investors have assigned any rights to Poonja. Despite what the individual defendants, BSI, and BST imply, the BSC estate is the real party in interest and Poonja is charged with administering that estate, which will receive the benefit of any recovery. A bankruptcy trustee is obligated to pursue viable claims for negligent

5

misrepresentation and breach of fiduciary duty. *See* 11 U.S.C. § 323. Thus, Poonja has standing to bring these allegations against the individual defendants.[5]

B.  First Claim: Breach of Fiduciary Duty

Poonja's first claim, for breach of fiduciary duty, alleges that the individual defendants "had a duty to institute and/or follow essential policies and procedures customarily used in the title insurance industry . . . and pursuant to the Underwriting Agreements, and to exercise ordinary skill and care while performing their services and duties pursuant to the underwriting agreements . . . ." FAC ¶ 64. The BSI directors argue that Poonja fails to state a claim for breach of fiduciary duty because the BSI directors owed no fiduciary duties to BSC. "When one company wholly owns another, the directors of the parent and the subsidiary are obligated to manage the affairs of the subsidiary in the best interests only of the parent and its shareholders." *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F.Supp. 826, 832 (S.D.N.Y. 1996). "In other words, those who operate the parent company owe no fiduciary duties to the wholly owned subsidiary . . . ." *Id.*

However, Poonja has alleged a claim of alter ego liability. The elements of an alter ego claim are: (1) "such unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist"; and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (Cal. Ct. App. 2000). In applying the doctrine, the Court considers factors such as "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell" for the other." *Id.* at 538-39 (citations omitted). Here, Poonja asserts that:

---

[5] The argument that the Poonja's claims are not ripe because Poonja has not alleged any obligation to pay the Title Companies' speculative claims fails. As Poonja states, the "claims are hardly speculative. BSC has been harmed and there are more than 408 liquidated claims filed in the BSC case [that] amount to" $8,496,659.14. Opposition at 13-14.

6

> BSI's officers and directors took over operational control of BSC before its cessation of business; BSI, BST, and BSC had common employees, common offices, and one business paid wages of the others' employees; BSI, BST, and BSC had common business names and services were rendered by one of these businesses on behalf of the others and the CEO of [BSI] and other executives of BSI replaced executives within BSC; BSI, BST and BSC commingled funds and resources; there became such a unity of interest and ownership between BSI, BST, and BSC that the individuality and separateness of entity ceased to exist and that the facts are such that adherence to the fiction of the separate existence of each entity would under the particular circumstances permit an abuse of the corporate privilege, and sanction a fraud or promote injustice; Defendants' resources were integrated to achieve a common business purpose and BSI exercised complete financial and operational control over BSC and BST; as a result, failures on the part of the officers and directors of BSC should also be construed as failures by the officers and directors of BSI and BST.

Opposition at 14-15 (citations omitted). The Court need not reach a conclusion as to the sufficiency of Poonja's allegations with respect to the first element because it concludes that Poonja has not alleged any facts with respect to the second element of an alter ego claim.

The BSI directors also claim that the director protection provision contained in BSI's Certificate of Incorporation precludes liability. Under Delaware law, a corporation may protect its directors from damages and liability for breach of fiduciary duty by including a protective provision in its certificate of incorporation. Del. Code Ann. tit. 8, § 102(b)(7). The directors of a corporation owe that corporation a duty of care, good faith, and loyalty. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). However, the FAC does not allege clearly whether the breach of fiduciary duty claim applies to a duty of care, good faith, and/or loyalty. Accordingly, the Court will grant the motions to dismiss the claim for breach of fiduciary duty with leave to amend.

C.      Second Claim: Negligent Misrepresentation

Poonja's second claim alleges negligent misrepresentation against the individual defendants. "Under California law, negligent misrepresentation is a species of actual fraud." *Lorenz v. Sauer*, 807 F.2d 1509, 1511-12 (9th Cir. 1987). Federal Rule of Civil Procedure 9(b) requires that claims of fraud be pled with sufficient specificity to allow a defendant an opportunity to defend against the claim, rather than simply deny they have done anything wrong.

7

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985).  Rule 9(b) "also prevents the filing of a complaint as a pretext for the discovery of unknown wrongs and protects potential defendants — especially professionals whose reputations in their fields of expertise are most sensitive to slander — from the harm that comes from being charged with the commission of fraudulent acts." *Id.*

As presently framed, Poonja's negligent misrepresentation claim does not meet the particularity requirement for a fraud cause of action.  While, Poonja claims that the Title Companies "reasonably relied on the express and implied representations" of the individual defendants "that they would operate as a reasonably prudent title insurance agent," FAC ¶ 71, the FAC does not identify with particularity the time, place, and specific content of each false representation.  *See Miscellaneous Serv. Workers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981) (noting that "the pleader must state the time, place and specific content of the false representations").

Poonja further claims that the individual defendants' "representations and failures to disclose were made negligently, in that exercise of due care and diligence," the individual defendants should have known that such representations and failures to disclose would deceive the Title Companies.  FAC ¶ 72.  "As a direct and proximate result of the Individual Defendants' misrepresentations, the [BSC] bankruptcy estate has been damaged, the full amount of which is unknown now and will be proven at trial." *Id.* ¶ 73.  The FAC must identify with particularity who made the misrepresentations and had knowledge of falsity, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (Cal. Ct. App. 1991), as well as a statement of the damage sustained, *Nagy v. Nagy*, 210 Cal.App.3d 1262, 1268 (Cal. Ct. App. 1989).

Finally, to the extent that Poonja seeks to impose liability for any implied misrepresentations, those claims must be dismissed.  *See Wilson v. Century 21 Great Western Realty*, 15 Cal.App.4th 298, 299, 306 (Cal. Ct. App. 1993) (noting that negligent misrepresentation requires a "positive assertion" and noting that "[a]n 'implied' assertion or representation is not enough."); *Huber, Hunt & Nichols, Inc. v. Moore*, 67 Cal.App.3d 278, 304

8

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART
(JFEX1)

(Cal. Ct. App. 1977) ("In the case at bar, Contractor relies on an *implied* representation. No cited authority holds that the doctrine of negligent misrepresentation applies to *implied* representations. In all cases a 'positive assertion' was involved."). Accordingly, the Court will dismiss the negligent misrepresentation claim with leave to amend, and will dismiss the implied misrepresentation claim without leave to amend.

D.     <u>Fifth and Sixth Claims: Claim on a Fidelity Bond and for Declaratory Relief</u>

Poonja claims that National Union made, executed, and delivered a Financial Institution Bond ("Bond") to BSI and BST. "Pursuant to the Bond, National Union agreed to pay for loss resulting from dishonest or fraudulent acts committed by an employee acting alone or with others." FAC ¶ 83. Specifically, National Union agreed to indemnify BSI and BST for:

> (A)     Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.
>
> Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:
>
> (a)     to cause the insured to sustain such loss; or
> (b)     to obtain financial benefit for the Employee or another person or entity.

FAC, Ex. B at Rider 2. National Union contends that Poonja's claim on a fidelity bond fails to allege the requisite manifest "intent, the absence of a loss, and the lack of any personal benefit" to incur coverage under the Bond, and that Poonja's claim for declaratory relief fails to allege an actual controversy. However, Poonja has alleged both an actual controversy and an actual loss which was the direct result of an employee's deliberate and wrongful act. The FAC alleges specifically that employees of BSC, BST, and/or BSI "acted wrongfully and deliberately, and took, withheld, and/or willfully misapplied to his/her own use" money belonging to BSC, BST, and BSI, FAC ¶ 85, and that the employees' wrongful acts caused BSC to sustain "a substantial, direct, financial loss of more than $100,000 in an amount to be proven at trial." FAC ¶ 86. In fact, "at least one employee stole approximately $25,000 from an escrow and used it to pay for her daughter's wedding." Issacs Decl. ¶ 4. Accordingly, National Union's motion to dismiss claims five and six pursuant to Rule 12(b)(6) will be denied.

9

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART
(JFEX1)

E.	Seventh Claim: Deepening Insolvency

Poonja's seventh claim for deepening insolvency alleges that Defendants caused BSC to continue its business for years at increasing levels of insolvency and caused BSC to become more deeply indebted. The BSI directors, Benjamin defendants, and BSI and BST argue that deepening insolvency is not recognized as a separate claim in California.

"'Deepening insolvency' refers to the 'fraudulent prolongation of a corporation's life beyond insolvency,' resulting in damage to the corporation caused by the increased debt." *Kittay v. Atl. Bank (In re Global Serv. Group LLC)*, 316 B.R. 451, 456 (S.D.N.Y. 2004) (citing *Schacht v. Brown*, 711 F.2d 1343, 1350 (7th Cir. 1983)). Some courts "have treated 'deepening insolvency' as an independent cause of action." *Id.* at 457. Other courts have considered deepening insolvency to be a theory of damages, questioned its validity, or "rejected the theory outright." *Id.*; *see Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 935-36 (5th Cir. 2001) (questioning whether Texas recognizes deepening insolvency as a cause of action); *Coroles v. Sabey*, 79 P.3d 974, 983 (Utah Ct. App. 2003) (rejecting the theory of deepening insolvency because shareholders suffer harm instead of the corporation).

In *Smith v. Arthur Anderson LLP*, 421 F.3d 989, 995 (9th Cir. 2005), the bankruptcy trustee for Boston Chicken, Inc. ("Boston Chicken") asserted a deepening insolvency claim against Boston Chicken's former officers and directors, attorneys, auditors, and investment bankers. The trustee alleged that Boston Chicken was insolvent, and instead of seeking bankruptcy protection, defendants kept Boston Chicken afloat, which "plunged Boston Chicken deeper and deeper into insolvency." *Id.* The Ninth Circuit observed that while it was difficult to grasp exactly what the theory of deepening insolvency entails, it agreed with the Third Circuit that "'prolonging an insolvent corporation's life through bad debt may' dissipate corporate assets and thereby harm the value of corporate property." *Id.* at 1003-04 (citing *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 350 (3d Cir. 2001). The court continued, "[t]hus, we agree that the complaint states a cognizable harm . . . when it alleges that the defendants 'prolonged' the firm's existence, causing it to expend corporate assets that would

not have been spent 'if the corporation [had been] dissolved in a timely manner, rather than kept afloat with spurious debt.'" *Id.* at 1004 (citing *Lafferty,* 267 F.3d at 350).

However, the issue in *Smith* was whether deepening insolvency could qualify as an injury for the purposes of standing, which is an inquiry separate from whether deepening insolvency should be considered a distinct cause of action:

> We stress that our ruling here is a narrow one. Because the only issue before us is whether the district court had jurisdiction, we hold only that the Trustee has standing to assert the [deepening insolvency claim] and do not opine on any issues related to the merits of those claims. . . . [A]lthough we hold that the dissipation of assets constitutes an injury to Boston Chicken, we express no opinion on whether the complaint states a valid claim for relief based on that injury[.]

*Id.* at 1006. The court concluded, "[i]n so holding, we do not opine whether the incurrence of additional debt that cannot be repaid, in and of itself, constitutes a corporate injury remediable by a trustee. We rely only on the dissipation of assets in reaching the conclusion that Boston Chicken was harmed." *Id.* at 1004. Because of the continuing evolution of whether deepening insolvency can be raised as a separate claim, and because of the Ninth Circuit's reluctance to decide one way or the other whether deepening insolvency can be raised as a separate claim, the Court will deny the motion to dismiss at this stage in the proceedings.

F.      Eighth Claim: RICO Violation

Poonja alleges that all Defendants except National Union have violated RICO. The RICO statute provides, in pertinent part, that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In order to maintain a civil RICO action, a plaintiff must allege: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). In order to allege the existence of a "pattern" of racketeering activity, plaintiff must allege at least two predicate acts, or two instances of such activity. *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997). Although Poonja does

11

allege mail fraud as one type of activity that could be considered a predicate act of racketeering, he has not alleged that act adequately.

First, Poonja has failed to meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9. Rule 9 requires that fraud be pled with particularity, *see* Fed. R. Civ. P. 9(b), and the Ninth Circuit has applied this requirement in RICO actions alleging mail fraud as the predicate act. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). Poonja alleges that "Defendants used interstate mail and made and received interstate telephone calls, and sent and received interstate fax transmissions and interstate email messages, and received payments for products and services never delivered or performed, which constituted mail fraud." FAC ¶ 97. However, Poonja fails to allege when and where the fraud occurred, to whom the fraud was made, or how each Defendant was involved in the alleged mail fraud. *See Moore*, 885 F.2d at 541 ("Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1989) (finding that a RICO claim is not adequately pled without a statement of the date, time, and place of the alleged wrongful conduct).

Second, a RICO claim must allege the separate identities of an enterprise and a person employed or associated with such enterprise. *Chang v. Chen*, 80 F.3d 1293, 1299-00 (9th Cir. 1996). Poonja's allegations that "Defendants are . . . employed by . . . an enterprise engaged in . . . activities of which affect, interstate or foreign commerce, to conduct or participate . . . through a pattern of racketeering activity or collection of unlawful debt" fail to satisfy this pleading requirement. FAC ¶ 96.

Finally, Poonja claims that "Defendants' conduct directly and proximately caused the injury to the estate" of BSC. FAC ¶ 98. Poonja has failed to plead any specific facts demonstrating that any mail fraud proximately caused an injury to BSC. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 259 (1992) (requiring "some direct relation between the injury asserted and the injurious conduct alleged"). Accordingly, the motions to dismiss Poonja's

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART
(JFEX1)

1 | eighth cause claim will be granted with leave to amend.

## IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED Defendants' motions to dismiss are GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART as set forth herein.

IT IS SO ORDERED.

DATED: April 4, 2006

_____
JEREMY FOGEL
United States District Court

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART
(JFEX1)

This Order has been served upon the following persons:

| | |
|---|---|
| Christopher H. Doyle | chd@msandr.com, kli@msandr.com; cag@msandr.com; bl@msandr.com |
| David W. Evans | devans@hbblaw.com, sgagnon@hbblaw.com; kblack@hbblaw.com |
| Patrick Edward Gibbs | patrick.gibbs@lw.com, zoila.aurora@lw.com |
| Amy Matthew | AM@MSANDR.COM, KLW@MSANDR.COM |
| Mark Jeremy Seifert | mark.seifert@lw.com, |
| Stephen Chew Seto | scs@msandr.com, |
| Michael Lloyd Smith | mls@mmker.com |
| James A. Tiemstra | jat@tiemlaw.com, sml@tiemlaw.com |
| Kirk Wagner | kwagner@nheh.com, |
| Phillip K. Wang | pwang@gordonrees.com |

USBC Manager-San Jose & Arthur S. Weissbrodt
US Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Michael Coyne had not been served separately because the service list does not provide his address

Case No. C 05-4471 JF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART
(JFEX1)