1

2                                                      **E-Filed 10/30/06**

3

4

5

6

7

8                              NOT FOR CITATION

9          **IN THE UNITED STATES DISTRICT COURT**

10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                       **SAN JOSE DIVISION**

12

| | |
|---|---|
| In re: BRIDGESPAN CORP., | Case Number C 05-4471 JF |
| Plaintiff. | ORDER[1] GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTIONS TO DISMISS |
| MOHAMED POONJA, | |
| Plaintiff, | [re: docket nos. 53, 54, 55, 57] |
| v. | |
| BRIDGESPAN TITLE COMPANY, et al., | |
| Defendants. | |

20                           **I. BACKGROUND**

21         BridgeSpan, Inc. ("BSI") is the parent corporation of two wholly-owned subsidiaries,

22  BridgeSpan Corp. ("BSC"), a Texas-based corporation, and BridgeSpan Title Co. ("BST"), a

23  California-based corporation.  BSI was founded to develop and market an online software

24  program ("eMA System") designed to provide an automated system for title agents, such as BSC

25  and BST, to process real estate purchases and loan closings.  Beginning in 2002, BSC and BST

26

27  _____

28         [1] This disposition is not designated for publication and may not be cited.

1    used the eMA System and paid fees to BSI for use of the system and technical support.

2          BSC was a title agent that recorded mortgages, property deeds, deeds of trust, and

3    performed title, escrow, and settlement services using the eMA System.  BSC also researched

4    title to determine the conditions under which an underwriter would issue title insurance, and title

5    insurance policies subsequently would be issued pursuant to these conditions.  BSC entered into

6    agreements with underwriters such as Old Republic National Title Insurance Co., Lawyers Title

7    Insurance Corp., and Stewart Title Co. ("Title Companies").

8          In January, 2004, one of the Title Companies inspected BSC's office after it learned that

9    BSC had not recorded certain mortgages.  On inspection, the Title Company found that BSC's

10   office contained hundreds of improperly filed and unrecorded mortgages dating back to April,

11   2003.  On January 27, 2004, BSC filed for corporate bankruptcy under Chapter 7 of the

12   Bankruptcy Code, 11 U.S.C. § 701 *et seq*. ("Chapter 7").[2]  The Title Companies have asserted

13   claims against BSC resulting from BSC's breach of its obligations to the Title Companies.

14         On January 12, 2005, Plaintiff Mohamed Poonja ("Poonja"), the Chapter 7 bankruptcy

15   trustee for BSC, filed a complaint alleging that BSC breached contractual and other duties to the

16   Title Companies, causing BSC to incur liability.  The Title Companies now are creditors in

17   BSC's Chapter 7 proceeding.  Poonja seeks to hold BSI, BST,[3] National Union Fire Insurance

18   Company of Pittsburgh, PA ("National Union") and twenty-six individual officers and directors

19   of BSI, BST, and BSC (collectively, "individual defendants") responsible for BSC's debts and

20   liabilities.  Poonja claims that BSI, BST, and the individual defendants failed to: (1) record

21   instruments to title; (2) properly issue title insurance in conformity with standard industry

22   practices; (3) adequately research title; (4) maintain files; (5) reconcile accounts and remit

23   premiums owed to title companies; (6) comply with statutes applicable to title agents; (7) provide

24

25          [2]  Case No. 04-50500.

26

27          [3]  On January 26, 2004, both BSI and BST filed for voluntary bankruptcy under Chapter
     11 of Title 11 of the United States Code, pending in the Northern District of California, Case

28   Nos. 04-50492 JRG and 04-50491 JRG.

2

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

1  sufficient advance notice of BSI's and BST's insolvency; (8) provide sufficient reports to title

2  companies regarding business transacted on their behalf; (9) issue the correct type of title

3  insurance; (10) maintain adequate records; and (11) properly disburse escrow funds.

4      On August 5, 2005, Poonja filed a first amended complaint ("FAC") asserting eight

5  claims for relief: (1) breach of fiduciary duty against the individual defendants; (2) negligent

6  misrepresentation against the individual defendants; (3) breach of contract against BSI and BST;

7  (4) negligence against BSI and BST; (5) claim on a fidelity bond against National Union; (6)

8  declaratory relief against National Union; (7) deepening insolvency against all Defendants except

9  National Union; and (8) a violation of the Racketeer Influenced and Corrupt Organizations Act

10  ("RICO"), 18 U.S.C. § 1961, *et seq*., against all Defendants except National Union.

11      Defendants subsequently filed five separate motions to dismiss.[4]  Defendants sought

12  dismissal of the claims for breach of fiduciary duty, negligent misrepresentation, claim on a

13  fidelity bond, declaratory relief, deepening insolvency, and the RICO violation.  Defendants did

14  not challenge the breach of contract or the negligence causes of action.  Poonja opposed the

15  motions.  The Court heard oral argument on March 31, 2006.  It granted the motion in part with

16  leave to amend and denied the motion in part in an order filed on April 4, 2006 ("April 4th

17  Order").  The Court granted the motions to dismiss the first, second, seventh, and eighth claims

18  with leave to amend.  The Court denied the motion to dismiss the fifth and sixth claims, the two

19  claims made against National Union and no other Defendants.

20      On June 2, 2006, Poonja filed a second amended complaint ("SAC"), asserting the same

21  eight claims for relief as the FAC.  On August 3, 2006, National Union answered the SAC.  The

22  BSI Directors; BSI and BST; the Benjamin Defendants; and the Moody Defendants filed separate

23

24      [4] The five separate motions to dismiss were filed by Defendants: (1) Bruce Dunlevie,
Nanda Kishore, Mark Stevens, Mark Evans, and Siva Kumar (collectively, "BSI Directors"); (2)
25  BSI and BST; (3) Mindy Benjamin, James Buchanan, Desmond Cahill, Dan Courtney, Michael
Coyne, Lynelle Dahn, Harley Davis, Joseph Donato, Joseph J. Evans, Mark Feld, Wesley Krantz,
26  Michael Mills, John Roberts, Robert G. Rockwell, Daryl Shoptaugh, Larry Walker, and Phillip
Weaver (collectively, "Benjamin Defendants"); (4) William Moody, Daniel Gaudreau, and
27  Trevor Stoffer (collectively, "Moody Defendants"); and (5) National Union.

28

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

1  motions to dismiss.[5]  These Defendants again seek to dismiss claims for breach of fiduciary duty,

2  negligent misrepresentation, deepening insolvency, and the RICO violation.[6]  BSI and BST also

3  move to dismiss the entire action.  Poonja again opposes.  The Court heard oral argument on

4  October 13, 2006.  For the reasons discussed below, the Court will grant the motion in part with

5  leave to amend, dismiss certain claims without leave to amend but without prejudice, and deny

6  the motion in part.

7                                        **II. LEGAL STANDARD**

8        Federal Rule of Civil Procedure 9(b) requires that the "circumstances constituting

9  fraud . . . be stated with particularity."  Fed. R. Civ. P. 9(b).  Statements of the "time, place, and

10  nature of the alleged fraudulent activities are sufficient," while "mere conclusory allegations of

11  fraud" are not.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)

12  (stating that a pleading is sufficient under Rule 9(b) "if it identifies the circumstances

13  constituting fraud so that a defendant can prepare an adequate answer from the allegations").

14        A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two

15  reasons:  (1) Lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal

16  theory.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds,*

17  *Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of a motion to dismiss, all allegations

18  of material fact in the complaint are taken as true and construed in the light most favorable to the

19  non-moving party.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995);

20  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

21        "A complaint should not be dismissed unless it appears beyond doubt the plaintiff can

22  prove no set of facts in support of his claim that would entitle him to relief."  *Clegg*, 18 F.3d at

23  _____

24        [5]  The Court will refer to each motion by the name of the defendant: e.g. "BSI Directors'
25  Motion."

26        [6]  The BSI Directors also argue that Soonja's claims are not ripe and that Soonja does not
   have standing to assert the claims in the SAC.  BSI Directors' Motion 9.  As the BSI Directors
27  note, the Court rejected these arguments in the April 4th Order.  *Id.* at n.5.  The Court will not
   consider these arguments in resolving this motion.
28

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

754.  The court, however, "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Id.* at 754-55.  A court's review is limited to the face of the complaint, documents the complaint referenced, and matters of which the court may take judicial notice.  *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996);  *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991).

Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Leave to amend must be granted unless it is clear that amendments cannot cure the complaint's deficiencies.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  Nevertheless, when amendment would be futile, dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988); *Beezley v. Fremont Indem. Co.*, 804 F.2d 530, 531 (9th Cir. 1986) (*per curiam*).

### III. DISCUSSION

1.    First Claim: Breach of Fiduciary Duty

The BSI Directors move to dismiss the first claim for breach of fiduciary duty.  The Court previously has stated that "the FAC does not allege clearly whether the breach of fiduciary duty claim applies to a duty of care, good faith, and or loyalty."  April 4th Order 7.  The SAC now alleges that the BSI Directors "breached their fiduciary duties of care, fiduciary duties of good faith, and fiduciary duties of loyalty, as directors and officers."  SAC ¶ 77.  Delaware corporate law governs the allegations of breach of fiduciary duties.  Cal. Corp. Code § 2116.[7]

The BSI Directors argue that they had no fiduciary duties to BSC as a matter of law

_____

[7]  This section provides: "The directors of a foreign corporation transacting intrastate business are liable to the corporation, its shareholders, creditors, receiver, liquidator or trustee in bankruptcy for the making of unauthorized dividends, purchase of shares or distribution of assets or false certificates, reports or public notices or other violation of official duty according to any applicable laws of the state or place of incorporation or organization, whether committed or done in this state or elsewhere. Such liability may be enforced in the courts of this state." Cal. Corp. Code § 2116.

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

because they owed no duty to the Texas subsidiary or its creditors.  BSI Directors Motion 11.

However, Poonja argues that the three BridgeSpan corporations are alter egos of each other and

should be treated as one entity.[8]  The elements of an alter ego claim are: (1) "such unity of

interest and ownership between the corporation and its equitable owner that the separate

personalities of the corporation and the shareholder do not in reality exist"; and (2) "an

inequitable result if the acts in question are treated as those of the corporation alone."  *Sonora*

*Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (Cal. Ct. App. 2000).  The Court

concluded in its April 4th Order that Poonja had not "alleged any facts with respect to the second

element of an alter ego claim."  April 4th Order 6.  In the SAC, Poonja repeats the allegation

made in the FAC, that "the facts are such that adherence to the fiction of the separate existence of

each entity would under the particular circumstances permit an abuse of the corporate privilege,

and sanction a fraud or promote injustice."  SAC ¶ 64.  Poonja further alleges that:

> Defendants' resources have been integrated to achieve a common business
> purpose and BSI exercised such significant financial and operational control over
> the other BridgeSpan entities that BSI should be held liable for any and all
> liability of any of the BridgeSpan entities and any failure to do so would result in
> a serious injustice.

*Id.*  This additional conclusory allegation does not satisfy the requirement that Poonja allege *facts*

with respect to the second element of the alter ego claim.

   The BSI directors also claim that the director-protection provision contained in BSI's

---

[8]  The BSI Directors argue that Poonja is judicially estopped from arguing an alter-ego theory because he took "the position in documents filed in the underlying bankruptcy case that the BridgeSpan entities were in fact distinct corporations."  BSI Directors Motion 12.  However, Poonja asserts that this has never been his position in the underlying bankruptcy case and that any treatment of the BridgeSpan entities as distinct entities was for administrative purposes only. Poonja also refers the Court to the Isaacs Declaration, filed on March 27, 2006, in conjunction with the earlier motion to dismiss.  This declaration provides a statement by a partner in the law firm acting as "duly appointed acting bankruptcy counsel for Plaintiff" rejecting the assertion that Plaintiff ever waived any rights to assert alter ego claims or made a judicial admission that the three BridgeSpan entities were distinct and separate entities.  Isaacs Declaration ¶ 4.  The Court concludes that Poonja is not judicially estopped from arguing an alter-ego theory.

6

Certificate of Incorporation precludes liability.[9]  Under Delaware law, a corporation may protect its directors from damages and liability for breach of fiduciary duty by including a protective provision in its certificate of incorporation.  Del. Code Ann. tit. 8, § 102(b)(7).  The directors of a corporation owe that corporation a duty of care, good faith, and loyalty.  *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).  The BSI directors raised the same issue in briefing prior to the April 4th Order and the Court concluded that it could not resolve this issue because "the FAC does not allege clearly whether the breach of fiduciary duty claim applies to a duty of care, good faith, and/or loyalty."  April 4th Order 7.  Poonja has now alleged the violation of multiple duties by the BSI directors in two alternative pleadings.

The first set of allegations appear at SAC ¶¶ 68-70.  There, Poonja alleges the violation of the duty of care by all the individual defendants (the BSI Directors, the Benjamin Defendants, and the Moody Defendants).  Poonja alleges that the "Individual Defendants, as directors and officers, had a duty to the parties to the escrow transactions to handle their funds and title documents with care and act as a trustee with respect to those transactions."  SAC ¶ 69.  Poonja also alleges that "Defendants have failed to record mortgages, deeds of trust and releases from liens in conformance with their duties and applicable standards of care and/or the Title Companies' policies and procedures;" SAC ¶ 70(a); and that "Defendants have breached their fiduciary duties to the parties to the escrows in that they failed to properly calculate and pay the taxes due and owing in a timely manner, if at all."  SAC ¶ 70(d).  Poonja further alleges a series of failures by the Defendants, without identifying a specific fiduciary duty to which these failures

---

[9]  The BSI Directors request that the Court take judicial notice of a series of documents, including the Amended and Restated Certificate of Incorporation of Bridgespan Inc.  The Court will take judicial notice of this certificate of incorporation for the limited purpose of recognizing its provision limiting directorial liability.  The Court has reviewed Poonja's argument that this Certificate does not establish the identity of inside or outside directors and draws no conclusions on this issue.  The Court will not take judicial notice of the other attached documents because it has not considered them for the purposes of the present motion.

The Court grants the request of Bridgespan Title Co. and Bridgespan Inc. that it take judicial notice of *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 2006 Del. Ch. Lexis 139 (Aug. 10, 2006).

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

1    pertain.  *See. e.g.* SAC ¶ 70(f) ("Defendants have failed to maintain files in a manner sufficient to

2    easily audit property title searches.").

3            These allegations all relate to the individual defendants' duty of care.  The BSI Directors

4    therefore may raise the defense that the director protection provision contained in BSI's

5    Certificate of Incorporation precludes duty of care liability.  The certificate provides that the

6    directors of the corporation shall not be "personally liable to the Corporation or its stockholders

7    for money damages for breach of fiduciary duty as a director."  BSI Director Request for Judicial

8    Notice Ex. F at 10.  Poonja argues that even if the Certificate of Incorporation ordinarily would

9    preclude duty of care liability, it would not do so in the present circumstances because Del. Code.

10   Ann. tit. 8, §102(b)(7) excludes "acts or omissions not in good faith or which involve any

11   intentional misconduct or a knowing violation of law," from a certificate's effect in limiting

12   liability.  However, Poonja does not adequately plead facts indicating such an absence of good

13   faith or intentional misconduct.[10]

14           The second set of allegations, argued in the alternative, appear at ¶¶ 77-78 of the SAC.

15   Poonja alleges:

16           Pleading in the alternative, the Trustee is informed and believes and thereon
             alleges that defendants Dunlevie, Mark Stevens, Kishore, Kumar, and Mark
17           Evans, when acting in their capacity as Outside Directors, authorized, ratified, or
             participated in the wrongful conduct, including the improper transfer of millions
18           of dollars among the three BridgeSpan entities, as described herein, and in doing
             so, did not exercise the care required of directors, and so breached their fiduciary
19           duties of care, fiduciary duties of good faith, and fiduciary duties of loyalty, as
             directors and officers.
20

21   SAC ¶ 77.  To the extent that this paragraph alleges a breach of the duty of care, such an

22

    _____

23          [10]  The BSI Directors also argue that Poonja has failed to meet the high gross negligence
    standard in alleging a duty of care violation.  Poonja argues to the contrary that the SAC "has
24   satisfied the Rule 8 standards and provided notice of the circumstances which give rise to the
    claims, set forth enough information to outline elements of the claim, or to allow reasonable
25   inferences to be drawn that they exist."  Opposition 19.  However, Poonja does not identify in the
    SAC which actions he believes reach the level of gross negligence.  Given that the Court has
26   already found grounds to dismiss this claim, it will not attempt to discern whether the alleged
    facts are sufficient to state a claim of gross negligence.  However, the Court notes that Poonja
27   now argues that the SAC adequately pleads both intentional misconduct and gross negligence.

28

                                                        8

1  allegation is subject to the same weaknesses discussed relative to the first set of allegations.  A

2  complaint consisting of "conclusionary allegations, unsupported by facts" will not survive a

3  motion to dismiss.  *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649-50 (9th Cir. 1984).

4  Any allegations of a breach of the duty of loyalty or a breach of the duty of good faith are

5  insufficient because of Poonja's failure to allege any facts in the SAC which pertain specifically

6  to a breach of the duty of loyalty or the duty of good faith.

7       Poonja stated at oral argument that he believed that he could allege additional facts to

8  support a claim for breach of fiduciary duty.  Accordingly, the Court will grant the BSI Directors'

9  motion to dismiss the claim for breach of fiduciary duty with leave to amend.

10  2.    Second Claim: Negligent Misrepresentation

11       The BSI Directors, BSI and BST, the Benjamin Defendants, and the Moody Defendants

12  move to dismiss the second claim for negligent misrepresentation.  The Court stated in its April

13  4th Order that the complaint must identify with particularity who made the misrepresentations

14  and had knowledge of falsity, as well as a statement of the damage sustained.[11]  April 4th Order

15  8.  The SAC still does not identify specifically misrepresentations made by any of the

16  Defendants.  Instead, Poonja has only added general allegations of misconduct of the business to

17  this claim in the SAC.  Indeed, paragraphs 81-84, which constitute the primary addition to this

18  section, appear almost identical to paragraphs 71-74, which Poonja added to the SAC's first

19  claim.  Poonja asserts that such additions satisfy the "standards governing notice pleading and

20  reasonable inferences."  Opposition 19.  They do not.  The Court will not require Defendants to

21  infer who made these alleged misrepresentations and what such misrepresentations contained.

22  Allegations of a pattern of extensive misconduct do not give rise to a presumption that individual

23  parties made misrepresentations and does not give Defendants appropriate notice of the identity

24  of the parties making misrepresentations or the content of such misrepresentations.  Poonja stated

25

26       [11]  The April 4th Order dismissed, without leave to amend, any allegations based upon a
    theory of implied misrepresentations.  The SAC includes reference to "express and implied
27  representations of the Individual Defendants."  SAC ¶ 80.  The Court draws this to Poonja's
    attention and reaffirms its April 4th Order.

28

9

1   at oral argument that he could not allege additional facts relevant to a negligent misrepresentation

2   claim at the present time, but might be able to do so in the future.  The Court therefore will grant

3   Defendants' motion to dismiss the second claim for negligent misrepresentation without leave to

4   amend, but without prejudice to a noticed motion by Poonja for leave to amend in the future.

5       3.      Seventh Claim: Deepening Insolvency

6          The BSI Directors move the Court to dismiss the seventh claim for deepening insolvency.

7   The Court denied an earlier motion to dismiss this claim in the FAC because of the apparent

8   reluctance of appellate courts, and particularly the Ninth Circuit, "to decide one way or another

9   whether deepening insolvency can be raised as a separate claim."  April 4th Order 11.  The BSI

10  Directors request that the Court resolve this issue now, particularly if it dismisses the three other

11  claims against the BSI Directors.  The BSI Directors argue that the Court should not "create a

12  new California tort of deepening insolvency."  BSI Director Motion 20.  Alternatively, the BSI

13  Directors argue that Poonja has failed to allege the required elements of duty and fraud.  *Id.* at 22.

14  BSI and BST also move to dismiss the seventh claim on the basis that "deepening insolvency" is

15  not a legally cognizable cause of action against the entity which is itself insolvent.  BSI and BST

16  Motion 7.

17         The moving parties have not persuaded the Court that it should reconsider the decision it

18  articulated in its April 4th Order.  The parties have not provided the Court with authority

19  suggesting that the state of the law of deepening insolvency has significantly changed since the

20  April 4th Order.  Because none of the other three claims against the Defendants is dismissed with

21  prejudice, the deepening insolvency claim alone does not hold any party in the instant litigation.

22  The Court therefore will deny the motion to dismiss this claim at this stage of the proceedings.

23      4.      Eighth Claim: RICO Violation

24         Poonja alleges that all Defendants except National Union have violated RICO.  The

25  RICO statute provides, in pertinent part, that it "shall be unlawful for any person employed by or

26  associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

27  commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

28

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

1  affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C.

2  § 1962(c). In order to maintain a civil RICO action, a plaintiff must allege: (1) the conduct (2) of

3  an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C. § 1962(c); *Sedima,*

4  *S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). In order to allege the existence of a

5  "pattern" of racketeering activity, plaintiff must allege at least two predicate acts, or two

6  instances of such activity. *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997). The Court

7  explained in its April 4th Order that while Poonja had alleged mail fraud as one type of activity

8  that could be considered a predicate act of racketeering, he had not alleged that act adequately.

9  Poonja still has failed to address the three inadequacies that the Court identified in its April 4th

10  Order.

11      First, Poonja has still failed to meet the heightened pleading requirements imposed by

12  Federal Rule of Civil Procedure 9. Rule 9(b) requires that fraud be pled with particularity, and

13  the Ninth Circuit has applied this requirement in RICO actions alleging mail fraud as the

14  predicate act. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.

15  1991). Poonja alleges that "Defendants for years routinely used interstate mail and made and

16  received interstate telephone calls, and sent and received interstate fax transmissions and

17  interstate email messages, and received payments for products and services never delivered or

18  performed, which constituted mail fraud." SAC ¶ 115. However, Poonja fails to allege when

19  and where the fraud occurred, who was defrauded, or how each Defendant was involved in the

20  alleged fraud. *See Moore*, 885 F.2d at 541 ("Rule 9(b) requires that the pleader state the time,

21  place, and specific content of the false representations as well as the identities of the parties to

22  the misrepresentation."); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir.

23  1989) (finding that a RICO claim is not adequately pled without a statement of the date, time,

24  and place of the alleged wrongful conduct).

25      Second, Poonja continues to fail to allege the separate identities of an enterprise and a

26  person employed or associated with such enterprise. *Chang v. Chen*, 80 F.3d 1293, 1299-00 (9th

27  Cir. 1996). "Although the evidence used to establish an enterprise and a pattern of racketeering

28

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

1   activity may in particular cases coalesce, '[t]he existence of an enterprise at all times remains a

2   separate element which must be proved.'" *Id.* (citing *United States v. Turkette*, 452 U.S. 576,

3   583 (1981). Poonja's allegations that "Defendants are . . . employed by . . . an enterprise engaged

4   in . . . activities of which affect, interstate or foreign commerce, to conduct or participate . . .

5   through a pattern of racketeering activity or collection of unlawful debt" fail to satisfy this

6   pleading requirement. SAC ¶ 115. Poonja has added an introductory paragraph to the

7   allegations stating that "[a]t all times mentioned herein, Defendants referred to, described,

8   advertised, and held BSI, BST, and BSC out to the general public, as well as to employees, staff,

9   customers, and clients, as one entity and nationwide enterprise known as BridgeSpan." SAC ¶

10  35. This allegation is most relevant to alter-ego liability. However, Poonja must allege the

11  existence of an enterprise distinct from the individual defendants which has a structure and which

12  functions as an ongoing unit, *see Turkette*, 452 U.S. at 583, not just that Defendants held out

13  BridgeSpan as a national enterprise.

14      Finally, although he claims that "Defendants' conduct directly and proximately caused

15  the injury to the estate" of BSC, SAC ¶ 115, Poonja still has failed to plead any specific facts

16  demonstrating that any mail fraud proximately caused an injury to BSC. *See Holmes v. Sec.*

17  *Investor Prot. Corp.*, 503 U.S. 258, 259 (1992) (requiring "some direct relation between the

18  injury asserted and the injurious conduct alleged").

19      Poonja stated at oral argument that he could not allege any additional facts relevant to a

20  RICO claim at the present time. Accordingly, the Court will grant Defendants' motions to

21  dismiss Poonja's eighth claim without leave to amend, but without prejudice to a noticed motion

22  to amend in the future.

23  5.      BSI and BST's Motion to Dismiss the Entire Action

24      BSI and BST move to dismiss the entire action against themselves on the basis that

25  Poonja advances an alter-ego theory that is inconsistent with the allegation that BST and BSI are

26  liable to BSC. Poonja responds that he may, and does, plead in the alternative. Poonja argues

27  that he need not explicitly designate alternative claims, citing *Holman v. Indiana*, 211 F.3d 399,

28

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

1   407 (7th Cir. 2000).  However, "[w]hile [plaintiffs] need not use particular words to plead in the

2   alternative, they must use a formulation from which it can be reasonably inferred that this is what

3   they were doing."  *Id; see also Coleman v. Standard Life Ins. Co.*, 288 F.Supp.2d 1116, 1120

4   (E.D.Ca. 2003) (quoting *Holman*).  As currently written, the SAC does not include a formulation

5   that would allow a reasonable inference that plaintiff is pleading in the alternative, such as the

6   "either-or" formulation suggested by *Holman* (citing 5 Charles A. Wright & Arthur R. Miller,

7   Federal Practice and Procedure § 1282 at 525 (2d ed. 1990)).  Since Poonja states in his papers

8   that he intended such an alternative pleading, the Court will dismiss the complaint with leave to

9   amend to the extent that such amendment comports with the analysis above.

10                                    **IV. ORDER**

11          Good cause therefor appearing, IT IS HEREBY ORDERED that the defendants' motions

12  to dismiss are:

13  1.       GRANTED IN PART with leave to amend with respect to the claim for breach of

14           fiduciary duty and the claims against BSI and BST;

15  2.       GRANTED IN PART without leave to amend, but without prejudice with respect to the

16           negligent misrepresentation and RICO claims; and

17  3.       DENIED IN PART with respect to the deepening insolvency claim.

18          The parties shall appear for a case management conference on December 15th, 2006, at

19  10.30 a.m..  At least a first mediation session shall be completed prior to that date.

20

21  DATED: October 30, 2006.

22

23

24

25

26  _____

27  JEREMY FOGEL
    United States District Judge

28

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)

This Order has been served upon the following persons:

Scott Michael Bloom          sbloom@hbblaw.com

Christopher H. Doyle          chd@msandr.com, kli@msandr.com; cag@msandr.com;
                              bl@msandr.com

David W. Evans               devans@hbblaw.com, kblack@hbblaw.com

Patrick Edward Gibbs          patrick.gibbs@lw.com, zoila.aurora@lw.com

Amy Matthew                  AM@MSANDR.COM, KLW@MSANDR.COM

Mark Jeremy Seifert          mark.seifert@lw.com,

Stephen Chew Seto            scs@msandr.com,

Michael Lloyd Smith          mls@mmker.com

James A. Tiemstra            jat@tiemlaw.com, sml@tiemlaw.com

Kirk Wagner                  kwagner@nheh.com,

Phillip K. Wang              pwang@gordonrees.com

Notice will be delivered by other means to:

Scott M. Bloom
Haight Brown & Bonesteel, L.L.P.
71 Stevenson Street
20th Floor
San Francisco, CA 94105-2981

Michael Coyne
,

Lisa Omori
Noland Hamerly Etienne and Hoss
333 Salinas Street
Salinas, CA 93901

USBC Manager-San Jose
US Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Arthur S. Weissbrodt
U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Case No. C 05-4471 JF
ORDER GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT PREJUDICE, AND
DENYING IN PART MOTIONS TO DISMISS
(JFLC1)